**Andrew G. Patel**
Attorney-at-Law
80 Broad Street, Suite 1900
New York, NY 10004
apatel@apatellaw.com
Fax: 646-304-6604                                        **Telephone: 212-349-0230**

By ECF

August 22, 2020

Honorable Kenneth M. Karas                 MEMO ENDORSED
United States District Judge
United States Courthouse
300 Quarropas Street
White Plains, NY 10601

                              Re:     United States v. Joaquin Thatcher
                                      13 Cr. 847 (KMK)

Dear Judge Karas:

        Joaquin Thatcher respectfully moves this Court to grant this motion for
compassionate release under 18 U.S.C. § 3582(c)(1)(A) and to reduce his sentence to
time served.  Alternatively, Mr. Thatcher respectfully requests, pursuant to 18 U.S.C. §
3624(c)(2), that he serve the remainder of his sentence in home confinement with the
previously imposed term of supervised release to commence upon completion.

Background

        Mr. Thatcher has been in federal custody since his November 6, 2013 arrest on
this matter.  Mr. Thatcher was in New York State custody at the time of his federal arrest.
This case was initially assigned to Your Honor but was transferred to the Honorable
Katherine B. Forrest (ret.) of this Court.  On May 27, 2015, Mr. Thatcher entered a guilty
plea before Judge Forrest to a single narcotics offense of violating 21 U.S.C. §
841(b)(1)(A) pursuant to a plea agreement.

        The plea agreement stipulated that the Guideline range was 121 to 151 months
imprisonment, with a mandatory minimum of 120 months of imprisonment. The plea
agreement was entered into by all parties in good faith but the parties were unaware of a
prior New York State Youthful Offender adjudication which had the effect of increasing

Honorable Kenneth M. Karas
United States District Judge
August 22, 2020
Page 2

Mr. Thatcher's Guideline range to 168 to 210 months.  A great deal of pre-sentencing
litigation followed this new information.  Your Honor is familiar with this issue as it was
litigated before you at the same time in the matter of *United States v. Jimmy Rodriguez*,
15 Cr. 176 (KMK) [Dkt. 115 and related submissions].  This protracted litigation and
numerous appearances before Judge Forrest gave her an opportunity to get to know Mr.
Thatcher well.

Judge Forrest sentenced Mr. Thatcher on January 8, 2016, primarily to 120 months
of imprisonment.  Judge Forrest attached a letter to the Judgement addressed to the
Bureau of Prisons, which contains many of her insights into Mr. Thatcher.  Judge Forrest
found that Mr. Thatcher "is an intelligent man who can still contribute to society if he has
the tools."  As many of the considerations discussed by Judge Forrest are relevant to
issues which Your Honor must determine in resolving this motion, the entire Judgement,
including Judge Forrest's letter, is attached as Exhibit A.

Mr. Thatcher is currently serving that sentence.  He has been designated to FCI
Fort Dix.  The Bureau of Prisons [BOP] has set Mr. Thatcher's anticipated release date as
December 18, 2023.

<u>Mr. Thatcher Has Exhausted His Administrative Remedies</u>

Prior to petitioning the Court, § 3582 requires Mr. Thatcher to either exhaust his
administrative remedies with the BOP or wait 30 days following the warden's receipt of
his compassionate release request, whichever happens first. See 18 U.S.C. §
3582(c)(1)(A); see also *United States v. Field*, 18 Cr 426 (JPO), [Dkt. 38] at *2
(S.D.N.Y. May 4, 2020) (deeming claim ripe for judicial review 30 days after the
defendant submitted a request to warden, where warden denied the claim within the 30-
day period); *United States v. Cooper*, 8 CR 356 (KMK), [Dkt. 181], at *7 (S.D.N.Y. Apr.
28, 2020) ("the application is now fully exhausted, based on BOP's denial of the
application on April 17, 2020.").

Mr. Thatcher has fulfilled the exhaustion prerequisite.  He sent a petition for
compassionate release to Warden David Ortiz of FCI Fort Dix which was denied on May

Honorable Kenneth M. Karas
United States District Judge
August 22, 2020
Page 3

28, 2020. See Exhibit B.   Because Mr. Thatcher has fulfilled the statute's administrative exhaustion requirement, the Court has authority to address the merits of his petition.

Compassionate Release

The First Step Act, 18 U.S.C. § 3582(c)(1(A)(i), allows federal prisoners to move for compassionate release when "extraordinary and compelling reasons" warrant such release.  There are four prerequisites to a Court's granting compassionate release under the First Step Act: (1) the defendant must have exhausted his administrative rights with the BOP; (2) the Court must find that "extraordinary and compelling reasons warrant" release; (3) the Court must consider the factors set forth in 18 U.S.C. § 3553(a); and (4) the Court must find that release is consistent with the Sentencing Commission's policy statements.

Health Concerns

We are living in the midst of a worldwide pandemic due to the emergence of COVID-19, a virus which is new to medical science.  While our knowledge of this disease increases on a near daily basis, we currently have no vaccine and no proven course of treatment.  According to the New York Times, as of August 18, 2020, over 5,400,000 Americans have been infected with COVID-19 and over 170,000 Americans died of COVID-19.  These numbers may well have been dwarfed by the time Your Honor decides this motion.  The New York Times reports that nationally inmates are infected with COVID-19 at a rate five times higher than the national rate.

Mr. Thatcher faces real danger should he contract COVID-19.  Mr. Thatcher has a history of thyroid cancer and he suffers from Hypothyroidism, an autoimmune disease for which he has been prescribed medication by the Bureau of Prisons medical staff.  The scientific community's understanding of COVID-19 is expanding every day.  To date, it is clear that autoimmune diseases are heightened risk factors for severe illness or death due to COVID-19.  The Center for Disease Control [CDC] has not reported any specific findings related to thyroid autoimmune disease and COVID-19.  It is respectfully submitted that Mr. Thatcher should not become a medical test case.  To avoid the virus'

Honorable Kenneth M. Karas
United States District Judge
August 22, 2020
Page 4

potentially catastrophic toll on his health, the Court should resentence Mr. Thatcher to time served.

Social Distancing and Self-Care are Impossible at FCI Fort Dix

The BOP reports that at FCI Fort Dix, where Mr. Thatcher is housed, 38 inmates have tested positive and in a facility that houses 2,469 inmates only 382 tests have been performed.[1]  According to information available on the BOP website, only about 15% of the people housed at FCI Fort Dix have been tested.

Mr. Thatcher is housed in a dormitory unit.  There are approximately 240 inmates in his dormitory.  He is housed in a room which is part of that dormitory.  His room houses 12 inmates.  They sleep on double tiered bunk beds within arm's reach of each other. He eats in the unit elbow to elbow with these other inmates.  He was given 3 masks at the start of the pandemic.  He washes these masks himself.  Under these living conditions social distancing is impossible.  Mr. Thatcher is being forced to live in a breeding ground for infection.

Mr. Thatcher's continued incarceration now significantly increases his risk of infection, which could wreak disastrous health outcomes.  In sentencing Mr. Thatcher to a below Guideline, the Court did not intend to impose a life sentence.  The Court should release Mr. Thatcher to avoid precisely that outcome.  See, e.g., *United States v. Valencia*, 2020 WL 2319323, at *7 (S.D.N.Y. May 11, 2020, J. Torres) ("The Court did not intend that Valencia's sentence 'include incurring a great and unforeseen risk of severe illness or death' brought on by a global pandemic.") (quotation marks and citations omitted); *United States v. Bess*, 2020 WL 1940809, at *10 (W.D.N.Y. April 22, 2020, J. Vilardo) (granting compassionate release to defendant sentenced to 84 months less than a year earlier, explaining "[t]his Court is now even more convinced that unless it lowers Bess's sentence, there is a substantial risk that he will become seriously ill and, with an unsettlingly high degree of probability, serve a life sentence.").

---

[1]     https://www.bop.gov/coronavirus/index.jsp last visited 8/18/2020.

Honorable Kenneth M. Karas
United States District Judge
August 22, 2020
Page 5

Extraordinary and Compelling Reasons

     Mr. Thatcher' confinement at FCI Ft. Dix in the middle of a pandemic that is
ravaging inmates and staff, and his medical needs, make him particularly susceptible to
sickness and complication should he contract the virus.  These combined concerns
constitute an extraordinary and compelling reason for his release under 18 U.S.C. §
3582(c)(1)(A)(i).

     While there are many unknowns about the virus, one thing is clear: COVID-19 is
deadly and highly contagious.  The CDC advises that the coronavirus is "spread mainly
from person-to-person . . . [b]etween people who are in close contact with one another . .
. [t]hrough respiratory droplets produced when an infected person coughs or sneezes."
The droplets can land in the mouths or noses, or can be inhaled into the lungs, of people
who are within about six feet of the infected person.  Those who are infected can spread
the virus, even if they are asymptomatic.   There is no known treatment, vaccine, or cure
for COVID-19 and citizens are warned daily to practice social distancing and to take
precautions when exposed to other individuals, even on a limited basis.  The CDC has
advised that individuals of any age who have serious underlying medical conditions
might be at a higher risk for severe illness from COVID 19.

     COVID-19 cases have been spreading rapidly at multiple BOP facilities, and
containment has proved to be impossible.  Bureau of Prisons staff come and go every
day, and although efforts are made to limit inmates' transport and transfer, due to the
communal nature of the living arrangements and the inability of inmates to self-isolate
and regularly wash and sanitize their hands, correctional facilities pose a unique risk to
both inmates and staff.[2]

---

[2]     BOP employees have expressed similar concerns and fears about the dangers of COVID-
19 and the inadequacy of measures to protect them.  On March 31, 2020, BOP employees filed a
complaint with the Occupational Safety and Health Administration, alleging that federal
prisoners are "proliferating the spread" of COVID-19 and that conditions at BOP facilities
nationwide place them in "imminent danger".  The union listed 100 of 122 facilities nationwide
with alleged safety or health hazards. The complaint alleges that the BOP has not taken adequate
safety precautions to mitigate the spread of COVID-19.

**Honorable Kenneth M. Karas**
United States District Judge
August 22, 2020
Page 6

On March 27, 2020, more than 400 former DOJ leaders, attorneys, and federal judges sent an open letter to the President, asking that he take immediate action to reduce the population in correctional facilities to prevent the catastrophic spread of COVID-19, in particular by commuting the sentences of elderly and medically vulnerable inmates who have already served a majority of their sentences. Leading public health experts made a similar request, as did members of Congress.  On April 3, 2020, Attorney General Barr issued a memorandum directing the BOP to move vulnerable prisoners into home confinement with due "dispatch."   On April 10, 2020, members of Congress wrote again to Attorney General Barr, noting that several inmates had since died in BOP custody, many of whom had pre-existing medical conditions.

Judges throughout the country are responding to this crisis and heeding advice of medical experts by releasing vulnerable inmates from overcrowded facilities.  I am sure that this Court is aware of the many instances of compassionate release being ordered in this District as the string-cites of those many cases is now as long as many briefs requesting release.

FCI Ft. Dix was identified in early May 2020 as one of the many federal prisons where an expedited release of at-risk inmates was essential due to the "skyrocketing" number of coronavirus cases in the facility.  Following weeks of inaction, attorneys filed a class action lawsuit against the Warden at FCI Ft. Dix and director of the Bureau of Prisons alleging that, knowing the "grave dangers" to inmates, they failed to "implement measures to comply with their constitutional obligations to those in their custody."

In *U.S. v. Nicholas Cooper*, 13 Cr 66 (JPO) [Dkt. 36, filed June11, 2020]  , United States District Judge J. Paul Oetken wrote of Ft. Dix:

> "At Fort Dix, at least 22 inmates have testified positive for COVID-19. Although the infections appear to have been at the "Fort Dix – Camp" facility rather than "Fort Dix – Low," where Defendant is housed, there is significant risk of infections at Defendant's facility, both from the movement of prison staff between the adjacent facilities and from the movement of inmates generally.  And due to the lack of testing at BOP facilities – a state of affairs that hopefully is in the process of being

remedied – there may have already be infections at Defendant's facility. Because it is virtually impossible to enforce effective physical distancing in a prison setting with shared cells, shared bathrooms, and shared dining facilities, the risk of spread of the coronavirus is significantly increased in prison."

When faced with a similar compassionate release request from an inmate at Ft. Dix, United States District Judge Laura Taylor Swain, in granting the application for release, acknowledged the efforts made by the Bureau of Prisons to control the spread of COVID-19 within its facilities including Ft. Dix but indicated "[n]onetheless, the Court agrees with [the defendant] that "prisons are more conducive to viral infections than home quarantine."  See *U.S. v. Victor Hernandez*, 10 Cr 1288 (LTS), [Dkt. 69, filed July 10, 2020, at Note 6].

Mr. Thatcher is an inmate for whom compassionate release is appropriate.

## 18  U.S.C. § 3553(a) Factors

When extraordinary and compelling reasons are established, the Court must consider the relevant sentencing factors in § 3553(a) to determine whether a sentence reduction is warranted.

Here, the overriding factor under § 3553(a) that was not present at the time of sentencing is the COVID-19 pandemic and the serious risk it presents to Mr. Thatcher's health and safety. The purpose of just punishment does not warrant a sentence that includes exposure to a life-threatening illness.  In fact, the Eighth Amendment's prohibition on cruel and unusual punishment includes unreasonable exposure to dangerous conditions in custody. "It is cruel and unusual punishment to hold convicted criminals in unsafe conditions." *Helling v. McKinney*, 509 U.S. 25, 33 (1993) (quotation marks and citations removed); see also *Wallis v. Baldwin*, 70 F.3d 1074, 1076 (9th Cir. 1995) (applying *Helling* to exposure to asbestos); *Brown v. Mitchell*, 327 F. Supp. 2d 615, 650 (E.D. Va. July 28, 2004) (applying *Helling* to "contagious diseases caused by overcrowding conditions").

**Honorable Kenneth M. Karas**
United States District Judge
August 22, 2020
Page 8

The Eighth Amendment also guarantees inmates in BOP custody the right to adequate medical care for a serious medical need. See *Farmer v. Brennan*, 511 U.S. 825, 832 (1994); *Estelle v. Gamble*, 429 U.S. 97, 103–05 (1976).  One court recently invoked the Eighth Amendment in granting a motion for compassionate release, noting that "a reduction of [defendant's] sentence will enable him to seek, from the doctors and hospitals of his choice, what may be better medical care than the BOP is obligated or able to provide, particularly given the very real threat that COVID-19 poses in the institutional environment."  *United States v. Williams*, 2020 WL 1751545 (N.D. Fla. Apr. 1, 2020).

In determining whether, and, to what extent, to reduce the sentence, this Court must take into consideration not only the offense conduct and the need for the sentence to reflect the seriousness of the offense and provide just punishment, but also all of the other § 3553(a) factors, including Mr. Thatcher's history and characteristics, the need to afford adequate deterrence, the need to protect the public from further crimes of the defendant, and the need for rehabilitation.

Other § 3553(a) factors warrant serious consideration.  While in the custody of the Bureau of Prisons, he has not had any disciplinary issues and has tried to make productive use of his time.  The defendant is not in need of educational or vocational training through the Bureau of Prisons. Nevertheless, Mr. Thatcher has tried to use his time productively by participating in several drug abuse and drug education programs. (See Exhibit C attached hereto.)

Most importantly, Mr. Thatcher is not a danger to the community.  Given the current circumstances and the unknown and unknowable timeline of this pandemic, including a second wave predicted to arrive in the fall, Mr. Thatcher will not be able to access needed medical treatment.  Additionally, we submitted that Your Honor should find that the time that Mr. Thatcher has already served is sufficient to satisfy the purposes of sentencing.

<u>Release Plan</u>

Mr. Thatcher has a release plan.  He will live with his cousin in her home in Yonkers, New York.  His cousin's home has a furnished basement where Mr. Thatcher will be able to live and to self-quarantine.  Mr. Thatcher will abide by any restrictions

**Honorable Kenneth M. Karas**
United States District Judge
August 22, 2020
Page 9

imposed by the Court or Probation.  Mr. Thatcher plans to seek employment and he has offers of employment waiting for him.  See job offers attached as Exhibit D.

<u>Release is Appropriate</u>

Mr. Thatcher has served a significant period of incarceration and releasing him to the community will not place anyone in danger; restrictions for the remaining portion of his sentence can accomplish the same deterrence and punitive effect, while removing him from the dangerous conditions of confinement at FCI Ft. Dix.  Lessening the population there not only protects Mr. Thatcher, but other inmates and staff as well.

Notably, Mr. Thatcher appears to meet the criteria for release.  Mr. Thatcher's crime of conviction is not a crime of violence, terrorism or sex offense; he does not have a detainer or mental health issues.  I have been advised by Adam Johnson, Esq., Regional Counsel for the BOP, that Mr. Thatcher has had no disciplinary infractions during the entire period that he has been in BOP custody. Mr. Thatcher has served all but 34 months of a 120 month sentence.  His conduct while in the BOP seems to justify Judge Forrest's belief that Mr. Thatcher does in fact "get it" and he should be permitted to rejoin this new and difficult world in which we find ourselves.

If the Court determines that additional punishment is warranted, this can be accomplished while protecting Mr. Thatcher's health; any specific deterrence and punishment purposes of sentencing can be achieved through home confinement if the Court determines that additional punishment is necessary to satisfy the goals of sentencing.  See 18 U.S.C. § 3624(c)(2).

<u>Conclusion</u>

Nobody could have foreseen at the time of sentencing that this pandemic would occur.  This pandemic demands that we reconsider sentences that were imposed when inmates were not put in grave danger by virtue of their conditions of confinement. COVID-19 is highly transmissible and extraordinarily dangerous and poses a severe threat of death to inmates such as Mr. Thatcher who have no ability to protect themselves from infection. Mr. Thatcher's vulnerability to contracting and potentially succumbing to

**Honorable Kenneth M. Karas**
United States District Judge
August 22, 2020
Page 10

this deadly disease constitutes "extraordinary and compelling reasons" to grant compassionate release and to reduce his sentence to time served.

Respectfully submitted,

  /s/Andrew Patel
Andrew G. Patel

encl.

The Government is to respond to this application by 9/8/20.

cc:    All counsel by ECF

So Ordered.

8/24/20

# Exhibit A

AO 245B (Rev. 10/15) Judgment in a Criminal Case
Sheet 1

# UNITED STATES DISTRICT COURT

Southern District of New York

| UNITED STATES OF AMERICA | ) | **JUDGMENT IN A CRIMINAL CASE** |
|---|---|---|
| **v.** | ) | |
| Joaquin Thatcher | ) | Case Number:  S1 13-cr-00847-KBF-1 |
| | ) | USM Number:  69509-054 |
| | ) | Andrew G. Patel |
| | ) | Defendant's Attorney |

## THE DEFENDANT:

☑ pleaded guilty to count(s)  One (1)

☐ pleaded nolo contendere to count(s)
   which was accepted by the court.

☐ was found guilty on count(s)
   after a plea of not guilty.

The defendant is adjudicated guilty of these offenses:

| Title & Section | Nature of Offense | Offense Ended | Count |
|---|---|---|---|
| 21:841A=CD.F | CONSPIRACY TO DISTRIBUTE AND POSSESS WITH INT | 10/31/2013 | 1 |

   The defendant is sentenced as provided in pages 2 through   8   of this judgment.  The sentence is imposed pursuant to the Sentencing Reform Act of 1984.

☐ The defendant has been found not guilty on count(s)

☑ Count(s)  Underlying   ☑ is   ☐ are dismissed on the motion of the United States.

   It is ordered that the defendant must notify the United States attorney for this district within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs, and special assessments imposed by this judgment are fully paid. If ordered to pay restitution, the defendant must notify the court and United States attorney of material changes in economic circumstances.

1/8/2016
Date of Imposition of Judgment

Signature of Judge

HON. KATHERINE B. FORREST, USDJ
Name and Title of Judge

2/11/16
Date

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: FEB 1 1 2016

AO 245B (Rev. 10/15) Judgment in Criminal Case
Sheet 2 — Imprisonment

DEFENDANT: Joaquin Thatcher
CASE NUMBER: S1 13-cr-00847-KBF-1

## IMPRISONMENT

The defendant is hereby committed to the custody of the United States Bureau of Prisons to be imprisoned for a total term of:

One Hundred and Twenty (120) Months, to run concurrent with any undischarged state sentences.

☑ The court makes the following recommendations to the Bureau of Prisons:

Please see additional Imprisonment Terms Page.

☐ The defendant is remanded to the custody of the United States Marshal.

☐ The defendant shall surrender to the United States Marshal for this district:

    ☐ at _____ ☐ a.m. ☐ p.m. on _____ .

    ☐ as notified by the United States Marshal.

☐ The defendant shall surrender for service of sentence at the institution designated by the Bureau of Prisons:

    ☐ before 2 p.m. on _____ .

    ☐ as notified by the United States Marshal.

    ☐ as notified by the Probation or Pretrial Services Office.

## RETURN

I have executed this judgment as follows:

Defendant delivered on _____ to _____

a _____ , with a certified copy of this judgment.

_____
UNITED STATES MARSHAL

By _____
DEPUTY UNITED STATES MARSHAL

AO 245B  (Rev. 10/15) Judgment in a Criminal Case
Sheet 2A — Imprisonment

Judgment—Page  3  of  8

DEFENDANT:  Joaquin Thatcher
CASE NUMBER:  S1 13-cr-00847-KBF-1

## ADDITIONAL IMPRISONMENT TERMS

PLEASE SEE ATTACHED LETTER WHICH SETS FORTH THE REASONS FOR RECOMMENDATIONS.

It is strongly recommended that the defendant be given priority placement in an RDAP program, (without regard to the defendant's criminal history)  in a facility that also has vocational programs available (in which he should also be given priority placement).

It is also recommended that the defendant be permitted to participate in a UNICOR work program.

AO 245B  (Rev. 10/15) Judgment in a Criminal Case
Sheet 3 — Supervised Release

Judgment—Page __4__ of __8__

DEFENDANT:  Joaquin Thatcher
CASE NUMBER:  S1 13-cr-00847-KBF-1

# SUPERVISED RELEASE

Upon release from imprisonment, the defendant shall be on supervised release for a term of :

Five (5) Years

      The defendant must report to the probation office in the district to which the defendant is released within 72 hours of release from the custody of the Bureau of Prisons.

The defendant shall not commit another federal, state or local crime.

The defendant shall not unlawfully possess a controlled substance.  The defendant shall refrain from any unlawful use of a controlled substance.  The defendant shall submit to one drug test within 15 days of release from imprisonment and at least two periodic drug tests thereafter, as determined by the court.

☐    The above drug testing condition is suspended, based on the court's determination that the defendant poses a low risk of future substance abuse.  *(Check, if applicable.)*

☑    The defendant shall not possess a firearm, ammunition, destructive device, or any other dangerous weapon.  *(Check, if applicable.)*

☑    The defendant shall cooperate in the collection of DNA as directed by the probation officer.  *(Check, if applicable.)*

☐    The defendant shall comply with the requirements of the Sex Offender Registration and Notification Act (42 U.S.C. § 16901, *et seq.*) as directed by the probation officer, the Bureau of Prisons, or any state sex offender registration agency in which he or she resides, works, is a student, or was convicted of a qualifying offense.  *(Check, if applicable.)*

☐    The defendant shall participate in an approved program for domestic violence.  *(Check, if applicable.)*

      If this judgment imposes a fine or restitution, it is a condition of supervised release that the defendant pay in accordance with the Schedule of Payments sheet of this judgment.

      The defendant must comply with the standard conditions that have been adopted by this court as well as with any additional conditions on the attached page.

# STANDARD CONDITIONS OF SUPERVISION

1) the defendant shall not leave the judicial district without the permission of the court or probation officer;

2) the defendant shall report to the probation officer in a manner and frequency directed by the court or probation officer;

3) the defendant shall answer truthfully all inquiries by the probation officer and follow the instructions of the probation officer;

4) the defendant shall support his or her dependents and meet other family responsibilities;

5) the defendant shall work regularly at a lawful occupation, unless excused by the probation officer for schooling, training, or other acceptable reasons;

6) the defendant shall notify the probation officer at least ten days prior to any change in residence or employment;

7) the defendant shall refrain from excessive use of alcohol and shall not purchase, possess, use, distribute, or administer any controlled substance or any paraphernalia related to any controlled substances, except as prescribed by a physician;

8) the defendant shall not frequent places where controlled substances are illegally sold, used, distributed, or administered;

9) the defendant shall not associate with any persons engaged in criminal activity and shall not associate with any person convicted of a felony, unless granted permission to do so by the probation officer;

10) the defendant shall permit a probation officer to visit him or her at any time at home or elsewhere and shall permit confiscation of any contraband observed in plain view of the probation officer;

11) the defendant shall notify the probation officer within seventy-two hours of being arrested or questioned by a law enforcement officer;

12) the defendant shall not enter into any agreement to act as an informer or a special agent of a law enforcement agency without the permission of the court; and

13) as directed by the probation officer, the defendant shall notify third parties of risks that may be occasioned by the defendant's criminal record or personal history or characteristics and shall permit the probation officer to make such notifications and to confirm the defendant's compliance with such notification requirement.

AO 245B  (Rev. 10/15) Judgment in a Criminal Case
Sheet 3A — Supervised Release

Judgment—Page ___5___ of ___8___

DEFENDANT: Joaquin Thatcher
CASE NUMBER: S1 13-cr-00847-KBF-1

## ADDITIONAL SUPERVISED RELEASE TERMS

The defendant shall report to the probation office in the district to which the defendant is released within 72 hours of release from custody of the Bureau of Prisons.

The defendant shall not commit another federal, state or local crime.

The defendant shall not illegally possess a controlled substance.

The defendant shall refrain from unlawful use of a controlled substance.

The drug testing condition is suspended due to the condition of continuing drug treatment, which may include testing.

The defendant is prohibited from possessing a firearm or other dangerous weapon.

The defendant shall cooperate in the collection of DNA as directed by the probation officer.

The defendant must participate in a program approved by the probation department for substance abuse, which may include testing to determine whether the defendant has been using drugs. The offender will be required to contribute to costs of services rendered in an amount to be determined by the probation officer, based on ability to pay or availability of third-party payment.

The defendant shall submit his person, residence, place of business, vehicle, or any other premises under his control to a search on the basis that the probation officer has reasonable belief that contraband or evidence of a violation of the conditions of the release may be found. This search must be conducted at a reasonable time and in a reasonable manner. Failure to submit to a search may be grounds for revocation. The defendant shall inform any other residents that the premises may be subject to search pursuant to this condition.

The defendant shall be supervised by the district of residence.

AO 245B (Rev. 10/15) Judgment in a Criminal Case
Sheet 5 — Criminal Monetary Penalties

Judgment — Page __6__ of __8__

DEFENDANT: Joaquin Thatcher
CASE NUMBER: S1 13-cr-00847-KBF-1

# CRIMINAL MONETARY PENALTIES

The defendant must pay the total criminal monetary penalties under the schedule of payments on Sheet 6.

| | **Assessment** | **Fine** | **Restitution** |
|---|---|---|---|
| **TOTALS** | $ 100.00 | $ | $ |

☐ The determination of restitution is deferred until _____. An *Amended Judgment in a Criminal Case (AO 245C)* will be entered after such determination.

☐ The defendant must make restitution (including community restitution) to the following payees in the amount listed below.

If the defendant makes a partial payment, each payee shall receive an approximately proportioned payment, unless specified otherwise in the priority order or percentage payment column below. However, pursuant to 18 U.S.C. § 3664(i), all nonfederal victims must be paid before the United States is paid.

| **Name of Payee** | **Total Loss\*** | **Restitution Ordered** | **Priority or Percentage** |
|---|---|---|---|
| | | | |

| | | | | |
|---|---|---|---|---|
| **TOTALS** | $ | 0.00 | $ | 0.00 |

☐ Restitution amount ordered pursuant to plea agreement $ _____

☐ The defendant must pay interest on restitution and a fine of more than $2,500, unless the restitution or fine is paid in full before the fifteenth day after the date of the judgment, pursuant to 18 U.S.C. § 3612(f). All of the payment options on Sheet 6 may be subject to penalties for delinquency and default, pursuant to 18 U.S.C. § 3612(g).

☐ The court determined that the defendant does not have the ability to pay interest and it is ordered that:

    ☐ the interest requirement is waived for the  ☐ fine  ☐ restitution.

    ☐ the interest requirement for the  ☐ fine  ☐ restitution is modified as follows:

\* Findings for the total amount of losses are required under Chapters 109A, 110, 110A, and 113A of Title 18 for offenses committed on or after September 13, 1994, but before April 23, 1996.

DEFENDANT:  Joaquin Thatcher
CASE NUMBER:  S1 13-cr-00847-KBF-1

## ADDITIONAL TERMS FOR CRIMINAL MONETARY PENALTIES

Forfeiture traceable to the offense is Ordered.

Judgment — Page    8    of    8

DEFENDANT:  Joaquin Thatcher
CASE NUMBER:  S1 13-cr-00847-KBF-1

# SCHEDULE OF PAYMENTS

Having assessed the defendant's ability to pay, payment of the total criminal monetary penalties is due as follows:

**A**  ☑  Lump sum payment of $   100.00   due immediately, balance due

    ☐  not later than _____ , or
    ☐  in accordance   ☐ C,   ☐ D,   ☐ E, or   ☐ F below; or

**B**  ☐  Payment to begin immediately (may be combined with   ☐ C,   ☐ D, or   ☐ F below); or

**C**  ☐  Payment in equal _____ *(e.g., weekly, monthly, quarterly)* installments of $ _____ over a period of _____ *(e.g., months or years)*, to commence _____ *(e.g., 30 or 60 days)* after the date of this judgment; or

**D**  ☐  Payment in equal _____ *(e.g., weekly, monthly, quarterly)* installments of $ _____ over a period of _____ *(e.g., months or years)*, to commence _____ *(e.g., 30 or 60 days)* after release from imprisonment to a term of supervision; or

**E**  ☐  Payment during the term of supervised release will commence within _____ *(e.g., 30 or 60 days)* after release from imprisonment. The court will set the payment plan based on an assessment of the defendant's ability to pay at that time; or

**F**  ☐  Special instructions regarding the payment of criminal monetary penalties:

Unless the court has expressly ordered otherwise, if this judgment imposes imprisonment, payment of criminal monetary penalties is due during imprisonment. All criminal monetary penalties, except those payments made through the Federal Bureau of Prisons' Inmate Financial Responsibility Program, are made to the clerk of the court.

The defendant shall receive credit for all payments previously made toward any criminal monetary penalties imposed.

☐  Joint and Several

    Defendant and Co-Defendant Names and Case Numbers *(including defendant number)*, Total Amount, Joint and Several Amount, and corresponding payee, if appropriate.

☐  The defendant shall pay the cost of prosecution.

☐  The defendant shall pay the following court cost(s):

☐  The defendant shall forfeit the defendant's interest in the following property to the United States:

Payments shall be applied in the following order: (1) assessment, (2) restitution principal, (3) restitution interest, (4) fine principal, (5) fine interest, (6) community restitution, (7) penalties, and (8) costs, including cost of prosecution and court costs.



UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
500 PEARL STREET
NEW YORK, NEW YORK 10007

CHAMBERS OF
KATHERINE B. FORREST
UNITED STATES DISTRICT JUDGE

February 8, 2016

United States Bureau of Prisons
Designation and Sentence Computation Center
346 Marine Forces Drive
Grand Prairie, TX 75051

Statement of Reasons re: Joaquin Thatcher 13-cr-847 (KBF)

I have sentenced hundreds of defendants during my time on the bench. This is the first time I have written a letter such as this. I write because I have spent significant time considering the nature of an appropriate and just sentence for Joaquin Thatcher, and I do not believe the typical Judgment & Conviction form would convey necessary information to the Bureau of Prisons. It is important that the BOP understand my views of Mr. Thatcher, which inform certain strong recommendations the Court makes regarding his sentence.

You will see from your review of Mr. Thatcher's records that he has a history of gang association and narcotics trafficking. I certainly appreciate the various security issues which accompany such past associations, and I understand the policy and practical reasons why gang association in particular may render an inmate ineligible or low priority for RDAP programs/space and certain vocational training. Nevertheless, because of my abiding belief that Mr. Thatcher has left his associations behind, is truly remorseful, and understands what he must do to live out his later years on the outside (all of which he has shown to an unusual degree), I am making the strongest possible recommendation that the BOP look beyond his past gang association and criminal history and allow him to participate in these programs.

Like so many defendants, Mr. Thatcher's life has been defined by drugs. He watched his father collapse and die from a heroin overdose at 12, was using by 13, has been arrested and convicted for possessing and selling drugs nearly a dozen times since he turned 16, and now at 39 is serving a 10 year sentence for drug crimes that

fed other people's addictions as well as his own. But unlike many defendants, he appears to have a true desire and commitment to getting and staying clean. Intensive in-patient treatment is necessary if he is to have a chance. He has shown an inability to do it alone. Based upon his letters, his statements in court, and his demeanor, I believe his access to such programs would be highly likely to have a positive outcome.

I also know that Mr. Thatcher's long criminal history and gang association generally constrain vocational training options. Again, my in-court experiences with him, as well as my review of his entire file, tell me that this particular defendant can make something of himself if he learns productive skills. He is the rare defendant who apologized to his community and appears to "get it," to really understand that unless he spends his time in prison making changes he will be no better off, and perhaps worse off, when he gets out. I believe Mr. Thatcher is an intelligent man who can still contribute to society if he has the tools. I strongly recommend that he be allowed to participate in work training programs.

Just before I sentenced him, Mr. Thatcher said two things to me that have stuck with me. First, he told me that he would rather be housed far from home if that meant he could get better access to rehabilitation (RDAP) and training. I believe that for Mr. Thatcher the services are the most important consideration, and I am glad that he agrees. The second thing was that when most of his friends hear his name, they don't ask how he's doing – they ask whether he is still alive. He understands what this means – and that, given his history, he is lucky to be alive at all. Mr. Thatcher has woken up to the possibilities an honestly led life may hold. I believe he will maintain this attitude and be much more successful in treatment and training than his background might suggest.

It is my strongest recommendation that Mr. Thatcher receive access to RDAP and vocational training, despite his history.

Sincerely,

*K. B. Foe*

Hon. Katherine B. Forrest
United States District Judge

# Exhibit B

Thatcher, Joaquin
Register No. 69509-054
Unit: 5711

## INMATE REQUEST TO STAFF RESPONSE

This is in response to your Inmate Request to a Staff Member in which you request consideration for a Compassionate Release/Reduction in Sentence (RIS) in accordance with Program Statement 5050.50.  Specifically, you request a Compassionate Release as an inmate with a "Debilitated Medical Condition."

In accordance with Program Statement 5050.50, Compassionate Release/Reduction in Sentence, Procedures for Implementation, 18 U.S.C. 3582(c)(1)(A) and 4205 (g), an inmate may initiate a request for consideration only when there are particularly extraordinary or compelling circumstances which could not reasonably have been foreseen by the court at the time of sentencing.  In order to meet the criteria as an inmate with a Debilitated Medical Condition, an inmate must be completely disabled, meaning the inmate cannot carry on any self-care and is totally confined to a bed or chair, or capable of only limited self-care and is confined to a bed or chair more than 50% of waking hours.

A review of your current medical status reveals you are a 43-year old male, diagnosed with history of thyroid cancer, hyperlipidemia, keratoconjunctivitis sicca, vitamin D deficiency, hernia and hypothyroidism.  Based on current CDC guidance you are not considered at higher risk for severe illness due to COVID-19.  You do not have a progressive illness or injury, your conditions are managed with medication and you are considered medically stable at this time.  The medical department at FCI Fort Dix advises you ambulate on the compound and complete activities of daily living independently. Therefore, your request for Compassionate Release is denied.

If you are dissatisfied with this response, you may appeal the decision through the Administrative Remedy process.

_____                    _5/28/20_____
David E. Ortiz                             Date
Warden

Exhibit C

```
   NERBD            *       INMATE EDUCATION DATA        *      08-11-2020
PAGE 001 OF 001 *               TRANSCRIPT              *      10:49:25


REGISTER NO: 69509-054     NAME..: THATCHER                 FUNC: PRT
FORMAT.....: TRANSCRIPT     RSP OF: FTD-FORT DIX FCI


------------------------- EDUCATION INFORMATION -------------------------
FACL ASSIGNMENT DESCRIPTION             START DATE/TIME STOP DATE/TIME
FTD  ESL HAS    ENGLISH PROFICIENT      01-24-2019 1127 CURRENT
FTD  GED HAS    COMPLETED GED OR HS DIPLOMA  06-25-2019 0954 CURRENT


------------------------- EDUCATION COURSES -------------------------
SUB-FACL   DESCRIPTION                 START DATE  STOP DATE EVNT AC LV  HRS
FTD GP     COMPUTER SKILLS VT-7:30-9:00AM 08-12-2019 09-25-2019   P  W  I   25
FTD RDAP   COMPUTER SKILLS VT-7:30-9:00AM 04-15-2019 06-28-2019   P  W  I    5
FTD RDAP   BASIC GED 0900 MOREL            05-11-2019 06-25-2019   P  W  I   30
BRO M      HIV/AIDS                        08-04-2015 09-01-2015   P  C  P   10


------------------------- HIGH TEST SCORES -------------------------
TEST       SUBTEST        SCORE     TEST DATE      TEST FACL   FORM      STATE
TABE D     BATTERY          0.0     05-10-2019     FTD         9
           LANGUAGE         0.0     05-10-2019     FTD         9
           MATH APPL        0.0     05-10-2019     FTD         9
           MATH COMP        0.0     05-10-2019     FTD         9
           READING          0.0     05-10-2019     FTD         9
           TOTAL MATH       0.0     05-10-2019     FTD         9




G0000      TRANSACTION SUCCESSFULLY COMPLETED
```

# Exhibit D

June 12, 2020


Attention: Mr. L Moore case Manager
FCI. Fort Dix
P.O. Box 38
Joint Base MDL, NJ 08640


eliminating racism
empowering women

**ywca**

To whom it may concern:

**YWCA Yonkers**
87 South Broadway
Yonkers, NY, 10701
**P:** 914.963.0640
**F:** 914.963.7103
ywcayonkers.org

I am writing a letter on behalf of Mr. Joaquin Thatcher Inmate # 69509-054. We
are notifying you that upon Mr. Thatcher's release he has a position waiting for
him. He will acquire a Full-time position as a custodian maintenance worker. If
you have any questions feel free to contact me @ 803-989-8177.


Best Regards,


Tamaisha Mayo
Supervisor

# G R A H A M

**CARING FOR KIDS & FAMILIES**
**SINCE 1806**

06/02/2020

Tow whom it may concern

This letter is on behalf of Joaquin Thatcher#69509-054

Notifying you that when Mr. Thatcher is released we have

A full time custodial maintenance job available for him upon

His release feel free to contact me at 914 478 1100 ext. 615

Sharon Jones

JORAUTOSALES LLC

Sales Phone: (718) 901-1896
9146025802
Email: info@JORAutoSales
Addresses: 328 South Broadway
Yonkers, NY 10705
1711 JEROME AVE
BRONX, NY 10453


L. Moore, (case manager) FCI. Fort Dix Po. box 38 Joint Base MDL. New Jersey 08640


To Whom it May Concern,

This letter of employment for hire is in Regards to Mr. Joaquin Thatcher ID no # 69509-054 in the hopes that Mr.Thatcher is Released in the near Future he is being offered a position of employment in the capacity of Auto Detailer employment would start at $14 /hr a total of 30 hours a week. Mr. Thatcher will have a 90 day review Mr.Thatcher would be offered $15/hr with a total 40 hours a week if evaluation goes well and is offered a permanent position. If you have any questions please feel free in reaching out I am available for questions.

Respectfully yours,


Martha Fakhoury